Good morning. May it please the Court, Joseph Seguenza for Petitioner this morning. Thank you for the calendar accommodation. This is a case that presents an issue of whether Petitioner and his family had firmly resettled in Canada, deemed the third country in this particular case, prior to their travel to the United States and filing of an application for asylum. Counsel, if you read the regulation literally, as your brief does, I see the strength of your argument, but I'm troubled by its logic. Let's see, if I'm remembering the right case, this is the one where he went to Canada, or the man and his wife went to Canada, and Canada was processing their asylum application, and while Canada was processing their asylum application, basically they decided they didn't like their jobs as a janitor and a worker in a nursing home or something, and came to the United States hoping for better employment. My concern is, if you treat that as not being firmly resettled in Canada, then it means that anybody, during the delay between the filing of an asylum application and the granting of it, is free to look around the world for the country they like best. But the purpose of firm resettlement doctrine is, the first place you land where you're safe and you can stay, that's it. It seems to me that in logic, if their asylum application in the United States is good, then their asylum application in Canada is good, and they would have been allowed to stay in Canada. If they wouldn't have been allowed to stay in Canada, because their asylum claim was not good, then they wouldn't be allowed to stay in the United States. So, nunc pro tunc, they would have received asylum in Canada, had they merely stayed there until their application process was completed, and that ought to satisfy firm resettlement. Tell me why that isn't sound. Well, what appears to be particularly instructive in this case, in this particular factual scenario, is that when petitioners arrived in Canada, they may have had initially an intent to firmly resettle there, as evidenced by their filing of an application for asylum. However, the fact that the asylum application remained unadjudicated for four years while they were in Canada is instructive in the sense that they're left without any sense of stability or security in that particular country, and there's no... Don't they remain adjudicated for comparable periods here? Granted, but in this particular case, in the context of whether or not they firmly resettled, petitioner would submit that an unadjudicated asylum application in the third country, Canada, for a four-year period constitutes indifference of the Canadian authorities to the plight of the immigrants from a country where they claimed that they were persecuted. Why? They're allowed to live and work there. They're not sent back. No, they're not. However, there is no direct evidence in the record, or rather petitioners would submit that the direct evidence here that they were not offered permanent resettlement by either permanent residency or citizenship is... Did they abandon their application in Canada when they left? I don't... You say they weren't offered. Yes. For all we know, that thing could have been percolating through the Canadian bureaucracy. Well, I would submit that on the facts, Your Honor, their credible testimony that they were only able to obtain menial jobs... Well, their economic migrants, when they moved from Canada to the United States, they weren't free. No, they weren't, granted, but... They don't improve their standing very much by abandoning their application. Well, their non-rebutted credible testimony that they could not obtain sufficient employment in Canada... He's working as a janitor. He's a well-educated person. Yes. And he could make, theoretically, if he were not discriminated against in Fiji, he could do pretty well over there, but the Indo-Fijians have a hard time sometimes. Now, he comes in at a time when, between these uprisings in Fiji, which are going on all the time, it's almost as bad as the Punjab. You never know which people are being picked on and when. But in this case, they were basically economic migrants when they came to the United States. They wanted a better job. And that's normal, but it doesn't erase the fact that they were in Canada long enough, unmolested, and had a pending petition. Yes, but petitioners submit that the Chio presumption does not come into play unless there is no evidence one way or another on the record as to whether or not they were offered firm resettlement. Well, what was the evidence in this? Why the Chio presumption? Well, the evidence in this case, Your Honor, is the fact that an unadjudicated four-year-old application for asylum can be interpreted as indifference of anything by the Canadian government to their plight. That forced them or compelled them. It happens in the United States a lot. I see these things. They're five or six years old. That doesn't mean that they denied it. In a democracy, the wheels are grinding exceedingly slow. Granted, Your Honor, however, the fact that they were not able to obtain sufficient employment to be able to establish themselves in Canada and become firmly resettled in that sense, they were ---- I can't see either point. It seems to me the four-year delay just results from having a lot of asylum seekers. And the United States and Canada share the problem of more asylum seekers than they have immigration judges to adjudicate. And as for the job, gosh, when the Russian Jews started going to Israel after the Jackson-Vanik Amendment, Israel was just full of former symphony violinists working as janitors. It wasn't because they were discriminating against the Russian immigrants. It's because there are a lot more janitorial positions open than symphony violinists' positions open. What's more, I don't see what's the matter with being a janitor. In the New York school system, they have about the highest pay of anyone in the school system, 100-plus. Actually, in Alaska, janitor is usually one of the most attractive positions because it pays well and you get overtime. I don't see what's so bad about being a janitor if you're a new immigrant. Your Honor, if I may address that directly, there is credible nonrebutted evidence, testimony by the petitioners, that they felt that their inability to obtain better employment in Canada, if you will, was based on their belief that because they were Indophagian, that there was some discriminatory factor in their being unable to obtain better employment there. Go ahead. Thank you. Query, how long would petitioners have to wait or suspend their lives in that third country before they're advised on the adjudication of their asylum application? Suppose, for instance, that it fell through the cracks and the application for asylum is not adjudicated for more than a ten-year period. Are petitioners required to put their lives on hold, fleeing from a country where they face persecution and they seek the security and stability of a country, whether it's Canada or the United States, and are compelled to leave Canada because their lives are on hold, so to speak? Counsel, I want to pursue the CHEO rule versus the Andreazian rule. Are you familiar with Andreazian? Yes. Why doesn't Andreazian apply here? Because there is no direct evidence of an offer, so the regulation is not complied with. Yes. But that case holds that a lengthy, undisturbed residence in a third country may establish a rebuttable presumption that the individual has the right to return to that country and remain there permanently. Why doesn't that apply here? Petitioners would submit that the direct evidence is that there is no offer of firm resettlement by the third country. So the Andreazian, factually, the Andreazian case is not on all fours with this particular case, granted. I believe that there were claims by the petitioner in that case that he was subjected to some harassment, if you will, in the third country or inability to remain in a country. Well, I'm looking at it from the standpoint of the resettlement rule. And this case seems to say that we can take into account, even though there is no firm offer of settlement in the other country, we can take into account undisturbed, lengthy undisturbed residence to establish a rebuttable presumption. Why don't we why doesn't that apply here? Well, I believe that the reg also sets out in the exception portion of the reg a host of factors that the court has to look at. And the type of housing that was affordable, that was available to them, the type and nature of employment that may have been available to them, and other factors that are specified in the regulation. So we would submit, petitioners submit, that their inability to obtain sufficient employment to support themselves in Canada for their testimony, based on their testimony that was unrebutted, and the fact that you do have an unadjudicated four-year-old asylum application compels them to seek refuge in the United States because there's indifference by the Canadian government to their claim. I see your point. Thank you, counsel. We'll now hear from the United States. May it please the court. James Grimes again for the Attorney General. As I understand it, I think the question before the court with respect to firm resettlement is, what happens if an alien departs the country voluntarily while his asylum application is pending? And in answering that question, I note the record reveals that petitioners remained unolested in Canada for four years. They received work authorization. They had jobs. They had free health care. They had free education for their children. They had a place to live. They owned a car. They had a right to remain while their application was pending. As I noted, they exercised that right. Essentially, they had a potential offer of permanent residence, and they were never asked to leave. The problem with your case is that the regulation says an offer of permanent resettlement. We know for a fact from the record that they did not have an offer of permanent resettlement. That's correct, Your Honor. And CHEO speaks to situations where, well, what it says is that when an alien has been someplace for a substantial period of time, the burden shifts to the alien to prove that he doesn't have an offer of permanent resettlement. But in this case, that burden is successfully carried. We know they don't have an offer of permanent resettlement in Canada because Canada hadn't finished processing the case yet. So how do we deal with it under the regulation that we have? Yes, Your Honor. I agree with you. That is. And does Andrazian help or not? I think that aspect of Andrazian does, Your Honor. But to get to Judge Klinefeld's question, the regulation does not say that you have not firmly resettled unless you have received an offer. It simply says if you have received an offer, then you're going to be considered to have firmly resettled. And so moving on from there to cases such as Vang and CHEO and more recently addressed in Ali, that's in our Rule 28J letter. But the IJ cannot, in that kind of a record, reach the conclusion that the regulation has been complied with. Well, there's also, yes, the regulation sort of doesn't answer that question. And the law simply says if you firmly resettled, you cannot receive asylum. So the question really comes down to having sought refuge, can they benefit from their own unilateral action of letting their application last? Now, obviously, there is no evidence that Petitioners were given an offer of permanent residence. But there's also no offer that they were ‑‑ excuse me, there's no evidence. Oh, I get it. You're saying read 8 CFR 208.15 to not have a negative pregnant. I don't believe that. Because an alien is firmly resettled if he's received an offer of permanent residence status. And you're saying it doesn't say and you shouldn't infer the negative pregnant that he isn't if he hasn't. I believe that's the case, Your Honor. And I think that the board through case by case adjudication has to address instances such as this. The Attorney General and Congress can't predict every circumstance. And I would note parenthetically that if this case were to arise today because of the compact that we now have with Canada, he would be returned there. But, of course, that compact is prospective only. So we have to look to the case law that is developed. And in this court, that case law is Vang and Chio. So I think the focus has to be on the Chio presumption because there's no evidence that they were denied an offer. They weren't. We know that they hadn't ‑‑ their application hadn't been fully adjudicated, but nor had it been denied. So the focus is on the presumption that arose because of the facts that I already discussed. Ultimately, we don't know whether it would be granted or denied, the application. But the reason we don't know is because Petitioners voluntarily chose to come to this country. And the reason they came here, well, they gave a few reasons. I believe one of the reasons was alluded to is they wanted a better job. And I agree, being a janitor isn't necessarily a horrible job. I'm not sure what jobs it is that they were qualified to hold. I believe at page 496 of the record, Mr. Maharaj testified that he was a bus driver in Canada, not that there was anything wrong with being a bus driver or anything wrong with working with the old or the infirm. I'm sure there were hundreds of thousands of people in this country who do that. So they left because of the job. They left ‑‑ at page 507, they said they left because they wanted to see what the United States looks like and because Mrs. Maharaj's family here. At page 542, they said they left because they didn't like being called refugees, which I believe is what they're asking this Court to call them. So the case comes down to whether or not they can benefit from their own unilateral action when they were never asked to leave. Let me ask you maybe an impertinent question, but I couldn't tell from this record whether Canada would take them back if they were to have a voluntary departure if they could go to Canada now. I don't know whether Canada would or not. As I indicated, if this case were to arise today, they would have to go back to finish their asylum application. Whether that's an indication of whether or not Canada would let them back, I don't know. The actual order of removal in this case is at 419, and it says Canada or Fiji. So whether or not Canada would accept them, I don't know. Whether or not Fiji would accept them, I don't know. Obviously, they did have at one point Fijian passports. So they had Fijian passports when they went to Canada. That's true. And, yes, Your Honor, they said, and I don't remember the page exactly, but they said in the record they had sent their passports back to Fiji to have them renewed at the time of their testimony. So they didn't have them with them at that point. But if you look at Vang, in Vang there the Court confirmed a situation in which the alien had lived for 12 years unmolested in France and unilaterally allowed his travel document to expire. That's sort of like the situation here where they unilaterally allowed their application in Canada to last. What do we do with Andresian? Where does that fit in relation to Cho and Vang? Well, I think what we're looking at is, do the facts give rise to a presumption that they would have to rebut? And I think the facts do give rise to a presumption. I don't know what Canada could have done short of putting the petitioners in line in front of all the other asylum applications they had, applicants that they had, to be, I don't know what Canada could have done to be more welcoming to them. They had, for one thing, they had free health care, which I seriously doubt they have here. You're not answering my question. Do Cho and Andresian say the same thing, or are they slightly different looks at the same issue? I think that they're, well, they're slightly different looks at the same issue through, you know, the facts of each case. I think that the point is that if you have an alien who's been in another country for a certain period of time, and Cho, I think it was three years, here it's four, then a presumption will arise. And then they would have to present evidence, such as what was presented, I believe, in Campo Seco, of some sort of hostility that was demonstrated toward them. There is no evidence of hostility here, and that's really the point. The presumption arose. They didn't present any evidence to rebut that presumption. And I think that this Court said in Cho that the fact that a persecuting regime exists doesn't mean that the victims get to choose one country of asylum over another. And I believe Judge Kleinfeld alluded to that, and that goes back to Rosenberg, where the Supreme Court said that all nations have to have an obligation to afford refuge to asylees, and that our asylum laws were not meant to open the door to refugees who found shelter elsewhere, which is what we have here. So if you take all the facts that I alluded to before, they had food, clothing, housing, free education, free health care, they were able to practice their religion, those are the facts that give rise, plus the four-year stay, to the presumption that they would have to rebut. And I don't know that they presented any evidence of that, to rebut that presumption. And so the agency was correct to find that the firm resettlement bar applied. Now, that takes us, unless there are any further questions on that issue, there is the separate issue of changed country conditions, which I don't believe as to asylum this Court would have to address if it credits the firm resettlement finding. But if you were to get to that, the problem with respect to the first petition, the dismissal of the appeal, is that Mr. Maharaj referenced this Court's decision in Gofor, which addressed the year 2000 coup with respect to Indo-Fujians, and ordinarily, because the Board didn't address that, I would suggest the Court would have to remand. But this case is somewhat unique because Petitioners filed a motion to reopen and then filed a petition for review with respect to the denial of the motion to reopen, and that motion to reopen is before the Court this morning. Of course, Mr. Maharaj has waived any challenge to it because he hasn't addressed it in his brief. So we know how the Board would address the issue. It did address the issue adverse to Mr. Maharaj, and he has not challenged that determination. So there would be no need to do that. And as to withholding and the Convention against Torture, again, the only decision that he has raised in his brief is the initial denial of his appeal. Well, Torture Convention was never raised before the Board in that context. And actually, if you look at pages 239 to 261 of the record, they barely mention withholding. But in any event, the Board addressed withholding and the Convention claim in denial of the motion to reopen, which Mr. Maharaj has not challenged, and therefore he is bound by it. So he's waived review of that issue. Unless there are any further questions, we would ask that you deny petitions for review for the reasons stated. No further questions. Thank you, counsel. The case just argued will be submitted for decision, and the Court will adjourn. Thank you. Thank you.
judges: Goodwin, O'scannlain, Kleinfeld